IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ABDIEL IRIZARRY CRUZ, his wife MARISOL FUENTES RODRIGUEZ, and their CONJUGAL PARTNERSHIP PLAINTIFFS**<br><br>V<br><br>**IPR PHARMACEUTICAL, INC. DEFENDANT** | **CIVIL NO.: 15-1334**<br><br>**JURY TRIAL IS REQUESTED** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** the Plaintiffs, by and through the undersigned attorney, and very respectfully state, allege and pray as follows:

**I.    NATURE OF THE ACTION**

1. This is an action brought by Plaintiffs, Mr. Abdiel Irizarry Cruz, (from hereinafter "Irizarry"), his wife Marisol Fuentes Rodriguez and their conjugal partnership, against his former employer, IPR Pharmaceutical, Inc. (from hereinafter "IPR" or "defendant"), for discrimination and retaliation by reason of a disability, requests for a reasonable accommodation, and the violation of civil rights and torts.

2. The Plaintiffs bring this action to remedy the depravation of rights secured to them, under the constitutions and laws of Puerto Rico and of the United States of America.

3. Irizarry alleges, in synthesis, that he was harassed, discriminated, retaliated, and eventually discharged by reason of his disability and requests for a reasonable accommodation, and also due to his opposition against defendant's unlawful employment practices. These

practices are prohibited by the Constitutions and laws of the Commonwealth of Puerto Rico, as well as of the United States.

4. The Plaintiffs suffered damages as a result of Defendant's actions.

5. The Plaintiffs request this Honorable Court, among other things, for compensation for their mental and emotional sufferings, and compensation for economic damages, back and front pay, loss of benefits, reinstatement, as well as declaratory relief by this Honorable Court.

## II. JURISDICTION

1. The jurisdiction of this Honorable Court is invoked pursuant to the American with Disabilities Act of 1990, 42 U.S.C., from hereinafter referred to as "ADA", which incorporates by reference sec. 706 (f) (1) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C., sec. 2000e-5 and 28 U.S.C., sec. 1331; The Civil Rights Act of 1964 and of 1991, as amended, from hereinafter "Title VII". The plaintiff also invokes the supplemental jurisdiction of this Honorable Court, pursuant to 28 U.S.C. sec. 1367, and seeks relief under Law Num.80 of May 30, 1976, as amended, 29 L.P.R.A. sec., 185 (a) et. seq.; and Law Number 44 of June 2, 1985, as amended, and article 1802 of the Civil Code of the Commonwealth of Puerto Rico.

2. The necessary procedural and administrative requirements to bring this action have been satisfied. A dual filing charge (with the Puerto Rico Antidiscrimination Unit and the Equal Employment Opportunity Commission) was filed on August 14, 2014. A Notice of Right to Sue was issued on December 31, 2014, which the plaintiff received on January 5, 2015. Thus, this action is being filed within the applicable 90 days period from receipt of the mentioned Notice of Right to Sue.

3. The Plaintiff is citizen of the Commonwealth of Puerto Rico.

4. This action involves a sum in excess of $100,000.00, exclusive of interest and cost.

5. This is the proper venue to bring this action since the facts relating to the cause of action arose in this District.

### III. PARTIES

1. Irizarry is a male, adult, married to co-plaintiff Marisol Fuentes Rodríguez, both residents of Canóvanas, Puerto Rico.

2. Since approximately the beginning of the year 2009, Irizarry was diagnosed as suffering from a severe major depression. Plaintiff's condition substantially limited several of his daily life activities. Among the daily life activities that Irizarry is substantially limited and/or cannot perform, notwithstanding his medical treatment and medications are the following: sleep, eat, short and long memory process, interpersonal relationships, domestic chores. Nevertheless and notwithstanding the aforementioned, the plaintiff could perform the functions and duties of his position.

3. Irizarry is a qualified individual with a disability, as that term is defined by the applicable statutes.

4. The defendant is a company and/or entity, authorized to do, and doing business in the Commonwealth of Puerto Rico, and has continuously employed in excess of 50 persons at all relevant times. At all times, the defendant was an "employer", as defined by all the laws invoked in the Complaint.

**IV.     STATEMENT OF CLAIM**

1.     Irizarry started working for the defendant in the year 2002, as a Manufacturer Operator I, and worked until August 8, 2014, the date when he was terminated.

2.     At the time of his termination, and since the year 2009, Irizarry was diagnosed as suffering from a severe major depression.  Since 2009, Irizarry was under psychiatric treatment, and until today he is still receiving treatment for his severe major depression condition.

3.     Due to his severe major depression, Irizarry was, and still is, substantially limited, and also could not and still cannot, perform several of his daily life activities, which were previously described.  Nevertheless, he was able to perform, and indeed performed, each and every function of his position up until his termination.

4.     Since the beginning of his employment with the defendant, in 2002, Irizarry was assigned to the first shift, that is, from 6:00 a.m. to 2:30 p.m.  Only on very few occasions, he was requested to work overnight and/or in different working shifts.

5.     However, in or around the year 2009, the defendant appointed Abraham Rodríguez ("Rodríguez"), as plaintiff's supervisor.  Later on, approximately since 2012, Daniel Betancourt ("Betancourt") was appointed as plaintiff's direct supervisor.

6.     Since Rodríguez started supervising Irizarry approximately in the year 2009, he started to change plaintiff's working shift and assigned him most of the time to work overnight.  Even though the defendant did not have a third shift, Rodríguez would constantly assigned Irizarry to work from 11:00 pm until early in the morning, but did not even assigned a specific shift to Irizarry; most of the time Rodríguez just sent a text message to the plaintiff the same day, ordering him to report either at 11:30 pm, 12:00 am, 1:00 am, whatever time he decided to.

4

7. Irizarry's emotional and mental condition were negatively affected, due to Rodríguez' actions previously described, since the defendant did not have third shift, however, Rodríguez continued assigning the plaintiff to work during working hours corresponding to a third shift, which, again, did not exists.

8. Irizarry explained to Rodríguez, on several occasions, that his mental well being was affected due to the overnights shifts and requested him to assign him again to the first shift. Irizarry stated to Rodríguez that he did not have objections to sporadically work outside his assigned shifts, should the company had the need, as it used to be before Rodríguez assignment as supervisor.  However, every time that Irizarry requested from Rodríguez to be reassign to his original working shift, Rodríguez told him that he will continue assigning him to whatever time he pleased and that if he (Irizarry) did not like it, he must then resign and leave, because now he was the supervisor and he was the one that decided who will work this or that schedule, and that in his prior employments that was the way he used to work and anyone who disagreed with his way to do business will be discharged.

9. Due to the actions previously described from Rodríguez, Irizarry's emotional and mental condition was affected, and he had to seek psychiatric treatment.

10. Irizarry was diagnosed as suffering from a major depression, as a consequence of defendant's actions against him, specifically of Rodríguez' actions of assigning him to different overnight working shifts, most of the time without any support personnel, and the pressure imposed upon him by Rodríguez.

11. When Irizarry was diagnosed as suffering from a severe major depression in 2009, he requested as a reasonable accommodation to defendant's top officers, José Aponte and

5

Evelyn Rivera from Human Resources Department, sick leave and time off to receive psychiatric treatment. He also requested again not to be assigned to overnights shifts, due to his mental and emotional condition and the medications he was prescribed with. Irizarry also requested a change of position and/or supporting personnel in order to comply with his functions and duties.

12. Immediately after Irizarry informed Rodríguez and the human resources officers about his diagnosis of severe major depression, as well as immediately after his requests for a reasonable accommodation in 2009, they started a harassment and discrimination campaign against him, due to plaintiff's disability and his requests for a reasonable accommodation. Among defendants' harassing and discriminatory actions against Irizarry, since 2009 up until plaintiff's termination, were the following:

13. Plaintiff's supervisors, Rodríguez and Betancourt (in the case of Betancourt since 2012), were also constantly, every time that Irizarry requested a medical leave and time off in order to receive medical treatment, making discriminatory and derogatory comments about the time that Irizarry was taking off in order to receive treatment for his mental and emotional condition, and threatened Irizarry with his termination if he continued requesting medical leaves and time off to receive treatment. Rodríguez and Betancourt were also constantly making discriminatory and derogatory comments about Irizarry's mental and emotional condition, and also due to his requests for a reasonable accommodation.

14. Rodríguez and Betancourt, almost every time that they referred to the plaintiff, they referred to him as "el perro loco" (the crazy dog) and "el loco ese" ("the crazy one"). If they send another employee to work along with Irizarry they would tell the employee: "go and see if you can work with the crazy one"; that since Irizarry was crazy it was best for him to work alone.

15. Rodríguez and Betancourt also removed from Irizarry his most important functions and duties, and assigned these functions and duties to employees with less seniority and experience.

16. Rodríguez and Betancourt also pressured Irizarry to finish the jobs assigned to him within unreasonable time periods and without any supporting personnel. Rodríguez and Irizarry limited and shortened the cleaning time of the production machines and did not allow Irizarry to verify the cleaning process, which negatively affected the functioning of the machines and would then disciplined the plaintiff for the machines malfunctioning.

17. Rodríguez and Betancourt were constantly, almost on a daily basis, up until plaintiff's termination, telling Irizarry that his performance was poor and were constantly threatening Irizarry with his termination, due to his mental and emotional condition, and also due to his requests for a reasonable accommodation.

18. Rodríguez and Betancourt excluded Irizarry from the meetings regarding the functioning and quality control of the machines that the plaintiff was in charge of providing maintenance to, and which Irizarry indeed maintained in optimum conditions. Rodriguez and Betancourt instead of consulting the plaintiff would consult and relied upon the information provided by other employees that were not qualified as the plaintiff was, resulting in the machinery malfunction, affecting the quality of products and/or production interruption. Rodríguez and Betancourt constantly told Irizarry that due to his mental and emotional condition and his requests for reasonable accommodation, he was no longer reliable and did not have the capacity to work with the equipment. Rodriguez and Betancourt would then issue disciplinary actions against Irizarry instead of the employees which were responsible of the different

problems and shortcomings with the equipment, threatening the plaintiff with disciplinary actions, including his termination.

19. Rodríguez and Betancourt would constantly, almost on a daily basis, compare plaintiff's performance with other employees' performance and told him that his performance was poor in comparison with these employees due to plaintiff's mental and emotional condition and the medications taken by him, notwithstanding the fact that plaintiff's performance was always excellent.

20. Rodríguez and Betancourt constantly told the plaintiff, almost on a daily basis, and every time that he requested time off for a medical appointment, that he was crazy and that his performance was poor due to the medications he was taken.  They also told the plaintiff that due to his leaves of absences his performance was poor and that if he continued with his absences he will be terminated, that he must schedule his appointments for the weekends or during his days off or else he was going to be discharged.

21. Rodríguez and Betancourt also constantly ordered the plaintiff to perform different functions and duties, for which he was not qualified.  They both even ordered Irizarry to prepare reports and to perform jobs that violated defendant's rules, regulations and quality control, and threatened Irizarry with his termination if did not perform the same, since they have to continue producing batches of products.

22. Rodríguez and Betancourt also negatively evaluated plaintiff's performance and, as a result, plaintiff's salary and benefits were negatively affected.

23. Rodríguez and Betancourt also threatened Irizarry with disciplinary actions, even with his termination, however, never disciplined other employees that have incurred in the same conduct for which Irizarry was disciplined.

24. Irizarry, approximately on a bi-weekly basis, up until his termination, complained to Human Resources officers, Aponte and Rivera, that he was being harassed and discriminated due to his disability and his requests for a reasonable accommodation, and also due to his opposition against defendant's discriminatory practices, and complained to these officers about the previously described actions; however, the defendant did nothing.

25. Immediately after Irizarry complained about the different harassing and discriminatory actions taken against him, Rodríguez and Betancourt continued and even increased the different discriminatory actions previously described.

26. In the month of July of 2014, the defendant suspended the plaintiff after interviewing him. The interview was regarding an alleged investigation of a non-compliance of a batch with the required standards. The defendant falsely accused Irizarry and another employee, William Arroyo Flores ("Arroyo"), of having incurred in violations to the Company's established procedures. However, Irizarry and Arroyo had previously complained on several occasions and reported to Rodríguez and Betancourt about the malfunctioning of the machinery that was operated by them and that the products did not comply with the manufacturing standards. Rodríguez and Betancourt were fully aware of the problems that were being caused due to the malfunction of the machinery and that the products did not comply with manufacturing standards. Nevertheless, they instructed Irizarry and Arroyo to continue operating the machinery notwithstanding being aware about the failure of the machinery to meet

9

the required specifications and standards. Rodríguez and Betancourt even threatened the plaintiff and Arroyo with their termination if they did not continue to operate the machinery and producing the batches "at any cost", as Rodríguez and Betancourt would tell them.

27. During the interview made to Irizarry during the investigation, defendant's officers, among these Betancourt, ordered Irizarry to sign a sworn statement against Arroyo, blaming him of having incurred in violations to the proceedings and in the operation of a machine, because they wanted to terminate Arroyo since he was old and sick and was worthless, and also since he was a thief and they did not want him at the Company anymore. Betancourt told Irizarry that he was going to tell Irizarry what he had to write in his sworn statement in order for them to be certain that they would be able to terminate Arroyo, because he was old and sick and they did not want him anymore. Irizarry at all times indicated to defendant's officers that he would not blame Arroyo and much less prepare a statement accusing him of something that was totally false, since neither Arroyo nor him committed any deviation of the proceedings, that they complied with the orders issued by their supervisors to operate the machinery and produce the material, even if the same did not comply with the standards. Nevertheless, Betancourt told Irizarry that if he did not prepare the sworn statement, he was going to be discharged.

28. Defendant's Human Resources officers, Aponte and Rivera along with plaintiff's supervisors, suspended Irizarry from his employment and told him that he would be terminated for his negative to sign a sworn statement against Arroyo, since they wanted to discharge Arroyo since he was old and sick.

29.     The defendant then, on August 8, 2014, met with the plaintiff, and informed him that he was terminated from his employment, due to his negative to sign a false statement against Arroyo.

30.     Undoubtedly, Irizarry's harassment, discrimination, and eventual termination was due to his disability, his requests for a reasonable accommodation, and also, due to his opposition against defendant's unlawful employment practices.

31.     The different harassing and discriminatory actions taken against the plaintiff by his supervisors, due to his disability, requests for reasonable accommodation and opposition against defendant's unlawful employment practices, previously described, created intolerable working conditions and a hostile work environment, which drastically and negatively affected Irizarry's emotional and mental conditions, and he has been receiving psychiatric treatment up until today.

32.     As a result of the events described herein, Irizarry has suffered considerable damages, including loss of compensation for his work, significant emotional and physical sufferings, loss of self-esteem as well as an affront to his dignity as a human being.

33.     Irizarry's wife, co-plaintiff Fuentes and their conjugal partnership have suffered severe mental, emotional and economic damages as a result of the different discriminatory and retaliatory actions taken against her husband, which affected Irizarry's wife mental and emotional condition as well as her economic condition.

34.     At the time Plaintiff was harassed and discriminated by Defendant, the latter were fully aware of the provisions of the American with Disabilities Act.  Defendant acted willfully and with reckless disregard of the law in depriving Plaintiff of employment, solely because of

Plaintiff's disability, request for reasonable accommodation, and opposition to defendant's unlawful employment practices, and as such, entitles the plaintiff to recover punitive and compensatory damages.

### FIRST CAUSE OF ACTION

1. Plaintiffs allege and reallege all previous paragraphs as if fully alleged herein.

2. The events described herein constitute discrimination by reason of disability and requests for a reasonable accommodation, and plaintiff's opposition against defendant's unlawful employment practice, in violation of the laws of the Commonwealth of Puerto Rico and the United States of America.

### SECOND CAUSE OF ACTION

1. Plaintiffs allege and reallege all previous paragraphs as if fully alleged herein.

2. The events described herein constitute an illegal discrimination and retaliation for reason of disability and for a request for a reasonable accommodation in violation of the American Disabilities Act of 1990, 42 U.S.C. sec. 12117 (a) and Law 44 of June 2, 1985, as amended.

### THIRD CAUSE OF ACTION

1. Plaintiffs allege and reallege all previous paragraphs as if fully alleged herein.

2. The events described herein constitute retaliation due to plaintiff's opposition against defendant's unlawful employment practices in violation of ADA, due to plaintiff's discrimination complaints, his requests for reasonable accommodation and his refusal to sing a

false statement against Arroyo, in order for the defendant to discharge Arroyo because the latter was old and sick.

## FOURTH CAUSE OF ACTION

1. Plaintiffs allege and reallege all previous paragraphs as if fully alleged herein.

2. The events described herein constitute unjust dismissal in violation of Act 80 of May 30, 1976, as amended.

## FIFTH CAUSE OF ACTION

1. Plaintiffs allege and reallege all previous paragraphs as if fully alleged herein.

2. The events described herein constitute a tort in violation of article 1802 of the Civil Code of the Commonwealth of Puerto Rico.

## RELIEF

**WHEREFORE**, the Plaintiffs pray this Honorable Court:

1. Award Plaintiffs double damages.

2. Award Plaintiffs damages in the amount of $250,000.00 for mental anguish, mental and emotional sufferings and distress.

3. Award Plaintiffs back pay, front pay and economic damages caused as a result of the illegal acts in the amount not less than $400,000.00

4. Award Plaintiffs the cost of their action, together with reasonable attorney's fees.

5. Reinstatement.

6. Award Plaintiffs liquidated damages of double the back pay and front pay which exceeds the sum of $400,000.00.

7. Award Plaintiffs compensatory damages.

8. Award Plaintiffs punitive damages.

9. Award Plaintiffs any other remedies to which they are entitled to, under the laws invoked in this Complaint, and in equity.

**A JURY TRIAL IS HEREBY REQUESTED.**

In San Juan, Puerto Rico this 31st day of March of 2015.

**RESPECTFULLY SUBMITTED.**

s:/*ANIBAL ESCANELLAS RIVERA*
**Aníbal Escanellas Rivera**
**U.S.D.C. #208908**

ESCANELLAS & JUAN, PSC
204 Domenech Avenue
San Juan, Puerto Rico 00918
Telephone 787.758.3000
Fax: 787.250.111
email: escanellas@prtc.net